UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JORGE CALVO,

 Petitioner,

v.                                                                          Case No.  8:05-cv-78-T-17MAP

JAMES V. CROSBY, JR.,

 Respondent.

_____

## ORDER

Before this Court is a pro se 28 U.S.C. § 2254 petition for writ of habeas corpus filed by a Florida prisoner, Jorge Calvo, challenging his conviction and sentence entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in case no. 97-14997. (Doc. 1 at 2)  He is currently proceeding on his amended petition. (Doc. No. 4) (hereinafter "petition").

BACKGROUND

Calvo was charged in case no. 97-14997 with trafficking in cocaine over 400 grams and less than 150 kilograms. Represented by court-appointed counsel, Calvo was tried by jury and found guilty as charged. On February 10, 1998, he was adjudicated guilty in accordance with the verdict and sentenced to a 15-year mandatory prison term. Calvo

appealed the state judgment. On March 12, 1999, the state district court or appeal per

curiam affirmed the conviction and sentence in case no. 98-00643. (Resp. Ex. 4). <u>Calvo</u>

<u>v. State</u>, 731 So.2d 658 (Fla. 2d DCA 1999)[table].   No rehearing was sought. Nor did

Calvo seek certiorari review in the United States Supreme Court.

Calvo filed a pro se rule 3.850 motion for postconviction relief dated June 22, 2000.

(Resp. Ex. 7).   On March 26, 2001, the state trial court denied the rule 3.850 motion

without an evidentiary hearing. (Resp. Ex. 8). Calvo appealed the summary denial, and on

February 19, 2003, the state district court of appeal reversed with regard to one claim of

alleged ineffective assistance of trial counsel. <u>Calvo v. State</u>, 800 So. 2d 315 (Fla. 2d DCA

2001). The decision provides, in relevant part:

> Jorge Calvo appeals the summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Calvo was convicted of trafficking in more than 150 grams but less than 150 kilograms of cocaine and was sentenced to fifteen years in prison. Calvo alleges that his counsel was ineffective in numerous ways. We affirm without comment as to all of Calvo's claims except one.
>
> Calvo argues that counsel was ineffective in failing to argue that there was insufficient evidence as a matter of law to establish that he was guilty of trafficking in cocaine. It appears that Calvo was arrested as a result of a sting operation in which a confidential informant arranged for Calvo and a codefendant to sell a kilogram of cocaine to an undercover officer. Calvo alleges that the kilogram contained approximately 995 grams of various legal substances resembling cocaine and approximately three to four grams of cocaine. Significantly, he alleges that the three to four grams of cocaine were completely isolated and separated by rubber packing material from the remaining substances. Apparently, only the isolated three to four grams of cocaine were tested to establish that they contained cocaine.
>
> If Calvo's allegations are true, counsel was ineffective in failing to argue for a judgment of acquittal on the basis that the State did not prove that Calvo had the requisite amount of cocaine to support a trafficking conviction. See Safford v. State, 708 So.2d 676 (Fla. 2d DCA 1998) (holding that where powder cocaine is separately packaged the State must prove that each package contained cocaine before the contents of that package may

be considered in establishing the requisite weight for trafficking); <u>Ross v. State</u>, 528 So.2d 1237 (Fla. 3d DCA 1988) (the same). <u>Cf. State v. Garcia</u>, 596 So.2d 1237 (Fla. 3d DCA 1992) (holding that the State could rely on the total weight of a package to establish a trafficking quantity where a sample from one area of the bag tested positive and a sample from another area tested negative but where the two substances were not separated by any physical barrier within the bag). The trial court did not specifically address this claim.

We therefore reverse and remand for further proceedings. If the trial court again summarily denies this claim, it must attach record documents conclusively demonstrating either that the three to four grams of cocaine were not physically separated from the remaining 995 grams or that the 995 grams tested positive for the presence of cocaine. Affirmed in part, reversed in part, and remanded. . . . .

<u>Calvo v. State</u>, 800 So. 2d 315 at 316.

On remand, following a response by the state, the state trial court held an evidentiary hearing on grounds 1a and b of the rule 3.850 motion on December 19, 2002, at which the parties agreed to proceed only on ground 1b of the rule 3.850 motion. On February 4, 2003, the state trial court denied Calvo's rule 3.850 motion. Calvo did not timely appeal the denial.

Calvo filed an <u>unsworn</u> pro se belated appeal petition dated July 8, 2003, in which he asserted that the rule 3.850 denial had been served on his postconviction counsel and not on Calvo. Ordered to file an amended petition with a proper oath, Calvo filed a <u>sworn</u> belated appeal petition dated July 29, 2003, which was granted September 19, 2003, the date to serve as the notice of appeal pursuant to the state district court's order in case no. 2D03- 3173.[1]  <u>Calvo v. State</u>, 860 So. 2d 416 (Fla. 2d DCA 2003)[table].

---

[1] A prior order granting a belated appeal dated August 21, 2003, was vacated. An appeal lodged thereafter in case no. 2D03-4009 was sua sponte dismissed on August 20, 2004.

On November 17, 2004, the state district court of appeal per curiam affirmed the rule 3.850 denial in case no. 2D03-4415. Calvo v. State, 892 So. 2d 482 (Fla. 2d DCA 2004)[table]. Rehearing was denied December 23, 2004. The mandate issued January 18, 2005.

The Present Petition

Calvo signed his original 28 U.S.C. § 2254 petition on January 8, 2005 (Doc. No. 1)  The original and amended petition on which he is proceeding are governed by the Effective Death Penalty Act of 1996 ("AEDPA") effective April 24, 1996. Maharaj v. Sec'y of Dept. of Corr., 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA imposes a one-year statute of limitations on all habeas corpus petitions. Under 28 U.S.C. § 2244(d)(1), persons in custody pursuant to a judgment of a state court may file petitions for habeas corpus within one year of any of four dates specified by the statute. The time during which a 'properly filed' application for state postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward the limitation period. See 28 U.S.C. § 2244(d)(2); Artuz v. Bennett, 531 U.S. 4 (2000).

For purposes of § 2244(d), Calvo's state conviction and sentence became final upon expiration of the time for seeking certiorari review following the March 12, 1999, affirmance in his direct appeal.  That date was June 10, 1999. See Bond v. Moore, 309 F.3d 770 (11th Cir. 2002) (finding that "the limitations period did not begin to run until the 90-day window during which [the § 2254 petitioner] could have petitioned the United States Supreme Court for a writ of certiorari expired."); see also, Jackson v. Sec'y for the Dep't of Corr., 292 F.3d

-4-

1347, 1348 (11th Cir. 2002).[2]  Thus, his AEDPA limitations period commenced June 11,
1999.  Calvo had until June 10, 2000, to file a timely federal habeas corpus petition or a
state collateral proceeding that would toll the running of the one-year period. Calvo did
neither. He did not file the Rule 3.850 motion for post-conviction relief until June 22, 2000.
The filing of the Rule 3.850 motion did not toll the running of the limitations period because
the one-year period had already expired on June 10, 2000.  Therefore, the present federal
petition is time-barred.

Calvo erroneously represented in his response to this Court's March 8, 2005, order
(Doc. No. 6) that his rule 3.850 motion was filed November 13, 1999. (Doc. No. 7). Calvo
apparently "seized on" an erroneous date reference in the second order denying relief on
his rule 3.850 motion. (Resp. Ex. 10)  When Calvo signed his pro se rule 3.850 motion
dated June 22, 2000 (Resp. Ex. 7), more than a year had elapsed during which he did not
have a state collateral petition pending in state court which would toll his limitation period.
See, Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (rejecting theory that
limitations period was reinitiated upon filing of timely rule 3.850 motion outside limitations
period); see also, Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.), cert. denied, 531
U.S. 991 (2000)(rejecting argument that AEDPA limitations period tolled for time period
prisoner had availed himself of new rule setting two-year limit for ineffective assistance of
appellate counsel claims).

---

[2] Calvo erroneously indicates his direct appeal result was "April 15, 1999." (Doc. No. 4 at 6). The April 15, 1999, mandate in his direct appeal does not govern the AEDPA finality determination. The 90-day period for filing in the United States Supreme Court a petition for a writ of certiorari seeking review of a decision of a state appellate court runs from the date of the state court's judgment, not the date of issuance of the mandate. See Supreme Court Rule 13.3.

In his reply to the response to the petition, Calvo reiterated his claim that he filed a rule 3.850 motion on November 13, 1999.  In a court-ordered response to the reply, Respondent negates Calvo's claim.

Calvo relies on a single, and mistaken, reference to the filing date in the second final denial of his rule 3.850 motion as November 13, 1999. (Resp. Ex. 10 at p.1). Calvo ignores that the first order denying rule 3.850 relief [reversed with regard to one ground] reflected that his postconviction motion was filed on June 26, 2000. (Resp. Ex. 8 at p. 1) Calvo's only rule 3.850 motion docketed in Calvo's state records is included as Exhibit 7 in the appendix to the response to his federal petition. That rule 3.850 motion, signed June 22, 2000, was stamped as filed with the state circuit court on June 26, 2000 (as indicated in the first rule 3.850 denial).

Respondent has filed the case docket in case no. 97-1499.  (See Doc. No. 16)  The case docket does not does not contain any evidence of a 1999 rule 3.850 motion filed by Calvo. The case docket reflects the rule 3.850 motion was filed June 26, 2000. (Resp. Ex. 38)

The upshot of this is Calvo is not entitled to use a November 13, 1999, filing date for the timeliness determination under 28 U.S.C. § 2244(d) because the single reference thereto in the second rule 3.850 denial is not accurate on the matter of the filing date.

To summarize, the date Calvo constructively filed his rule 3.850 motion was when he signed the motion on June 22, 2000. Although Calvo proclaims the existence of a factual dispute, he offers the Court nothing  that would show he actually delivered his rule 3.850 motion to prison officials for mailing any earlier than June 22, 2000, when he swore to his allegations in the rule 3.850 attack. (Resp. Ex. 7 at p. 15) The rule 3.850 motion itself

is adequate to show Calvo filed the  rule 3.850 motion no earlier than June 22, 2000.

(Resp. Ex. 7 at p. 15). Calvo's present federal habeas corpus petition was not timely filed.

## Equitable Tolling

Calvo has not demonstrated that he is entitled to equitable tolling. Title 28 U.S.C.

§ 2244(d)(1) is a statute of limitations that is subject to equitable tolling, not a jurisdictional

bar. Sandvik v. United States, 177 F.3d 1269 (11th Cir. 1999);[3] Henderson v. Johnson, 1

F. Supp. 2d 650 (S.D. Tex. 1998). However, such tolling is available only when the

petitioner meets the high hurdle of showing (1) extraordinary circumstances (2) beyond his

control (3) that made it impossible to file his petition on time. See Sandvik, 177 F.3d at

1271-1272 (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990);

Calderon v. United States District Court, 163 F.3d 530, 541 (9th Cir. 1998)(en banc); Miller

v. New Jersey Department of Corrections, 145 F.3d 976, 978 (10th Cir.), cert. denied, 119

S.Ct.(1998)); Turner v. Singletary, 46 F. Supp. 2d 1238, 1242 (N.D. Fla. 1999).

The Henderson Court stated:

> Many excuses presented in future cases will be easily identifiable as far from extraordinary, well-within the prisoner's control, and insufficient to have rendered it impossible for the prisoner to have filed a timely petition. Nevertheless, because the standard is expressed in terms intended to be applied generally, it is advisable to augment the rule with more specific principles that guide its implementation. Otherwise, court decisions that resolve AEDPA tolling questions may amount to nothing more than a patchwork of individual rulings that succeeding courts must attempt to follow or distinguish on their facts. The court therefore adopts the following nonexclusive factors to assist in deciding whether a prisoner has met the high tolling standard. Although not all factors will apply in a given case, other

---

[3] In Sandvik, the Eleventh Circuit held that equitable tolling was not appropriate when his lawyer sent Sandvik's petition by ordinary mail from Atlanta less than a week before it was due in Miami.  The court opined that, "while the inefficiencies of the United States Postal Service may be a circumstance beyond Sandvik's control, the problem was one that Sandvik's counsel could have avoided by mailing the motion earlier or by using a private delivery service or even a private courier.  177 F.3d at 1272.

considerations may appropriately be considered, and each factor need not carry equal weight, these considerations will enable the court to address the tolling issue using a framework that clarifies the more abstract aspects of the general rule.  These factors are as follows:

1.  whether the circumstance on which the prisoner relies is substantially similar to one of the grounds that Congress provided in 2244(d)(1)(B)-(D) would delay commencement of the limitations period;

2.  whether the circumstance is substantially similar to one that the Supreme Court or the Fifth Circuit has determined would toll a limitations period imposed by a similar type of statute;

3.  was the circumstance extraordinary when measured according to those encountered by a typical prisoner who prosecutes pro se a federal habeas petition;

4.  was the circumstance beyond the prisoner's control when measured according to the degree of control available to a typical prisoner who prosecutes pro se a federal habeas petition;

5.  if the prisoner has established an extraordinary cause that was beyond his control, for what portion of the one-year period was the insuperable impediment in effect, and did the circumstance render it impossible for the prisoner to file a timely petition before the impediment began or after it ended;

6.  if the prisoner was represented by counsel in the federal habeas process, whether counsel rendered ineffective assistance that was both constitutionally deficient and actually prejudiced the prisoner's filing of a timely petition;

7.  whether the court, by approving the ground on which the prisoner relies, would materially ease the high standard necessary to toll AEDPA's limitation period, thereby undermining Congress' expressed desire to accelerate the federal habeas process;  and

8.  whether, if the period is not tolled on the ground on which the prisoner relies, the effect will be unconstitutionally to suspend the writ of habeas corpus, in violation of Article I, S 9, cl. 2 of the Constitution.

Henderson, 1 F. Supp. 2d at 654.

In Akins v. United States, 204 F.3d 1086 (11th Cir. 2000), the Eleventh Circuit examined whether prison lockdowns and misplacement of legal papers would equitably toll the running of the one-year period, and whether a prison lockdown was an unconstitutional impediment, the removal of which would trigger the statute of limitations for filing a motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. The appellate court found that the lockdown would not equitably toll the running of the one-year period because Akins had adequate time to file the a timely motion to vacate when he was not in a lockdown situation.  204 F.3d at 1089.

In addition, the Akins court found that the inability of a prisoner to access the law library is not an unconstitutional impediment that prevented Petitioner from exercising the fundamental right of access to the courts in order to attack his sentence. 204 F.3d at 1090.

Finally, in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the "extraordinary" circumstances required for equitable tolling. Fahy v. Horn, 240 F.3d 239, 244 (3rd Cir. 2001) (citing Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling); Seitzinger v. Reading Hosp. and Medical Ctr., 165 F.3d 236 (3d Cir.1997) (finding that an attorney's deception, which caused a prisoner to miss the habeas filing deadline, merits equitable tolling); Doherty v. Teamsters Pension Trust Fund of Phila. & Vicinity, 16 F.3d 1386 (3d Cir.1994) (allowing time to toll because of the death of the petitioner's attorney).

Accordingly, the Court orders:

That Respondent's motion to dismiss the habeas corpus petition as time-barred (Doc. No. 11) is granted.  Petitioner's petition is dismissed as time-barred. The Clerk is directed to enter judgment against Petitioner Calvo and to close this case.

ORDERED at Tampa, Florida, on *FEBRUARY 24th*, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Jorge Calvo

-10-